## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---------------------------------------------------------- X

RAYMOND TYLER, on Behalf of Himself and
All Others Similarly Situated,

                        Plaintiff,           :      05 CV 10167 (NMG)

      vs.

ASTRAZENECA, PLC, PERCY BARNEVIK,
TOM MCKILLOP, JONATHAN SYMONDS,
and, HAKEN MOGREN

                    Defendants.

---------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE FOSTER GROUP FOR APPOINTMENT AS LEAD PLAINTIFF PURSUANT TO §21D OF THE EXCHANGE ACT, AND APPROVAL OF LEAD PLAINTIFF'S CHOICE OF LEAD COUNSEL

{00004446.DOC ; 1}

Movants Robert W. Foster, Roy E. Humphrey, Bruce Elliott, Roberta R. Wiktorin, Robert Glen Reinhart, Ray Washam Jr., and Danny Richards (the "Foster Group" or "Movants") hereby respectfully submit this memorandum of law in support of their motion for: (i) appointment as Lead Plaintiff, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (iii) approval of Movants' selection of Lead Counsel.

## INTRODUCTION

The Actions are securities fraud class actions brought against AstraZeneca, PLC ("AstraZeneca" or the "Company"), and Tom McKillop, Jonathan Symonds, Haken Mogren, and Percy Barnevik (collectively referred to as the "Defendants") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, on behalf of all persons who purchased AstraZeneca American Depositary Receipts ("ADRs") at artificially inflated prices during the proposed Class Period (collectively, the "Class").

Movants purchased 1,500 AstraZeneca ADRs between April 2, 2003 and October 8, 2004 (the "Class Period"), and suffered estimated losses[1] of $9,862.75 as a result of Defendants' misconduct. Movants seek appointment as Lead Plaintiff and approval of their selection of Lead Counsel for plaintiffs and the Class as set forth herein. As discussed below, Movants have satisfied each of the requirements of the PSLRA and, therefore, are qualified for appointment as Lead Plaintiff.

---

[1] The estimated losses suffered by Movants are determined based on the certifications required under Section 21D of the Exchange Act and based on information concerning the current market for the Company's ADRs. See Declaration of Aaron L. Brody, March 22, 2005, Ex. C. ("Brody Decl.").

## PROCEDURAL BACKGROUND

On or about January 27, 2005, the plaintiff in the Tyler action[2] filed a complaint on behalf of a class consisting of all persons and entities who purchased AstraZeneca ADRs at artificially inflated prices during the proposed Class Period. On January 21, 2005, notice was published over Business Wire, advising members of the proposed class of their right to move the Court to serve as lead plaintiff within the requisite period from the date of publication of the notice. See Brody Decl., Ex. A.

## STATEMENT OF FACTS

AstraZeneca PLC is a London based pharmaceutical company which researches, develops, manufactures and markets prescription pharmaceuticals and healthcare services.[3] ¶ 2, 18. AstraZeneca ADRs trade on the New York Stock Exchange under the ticker AZN. ¶ 5. During the Class Period, the Company engaged in late-stage clinical trials of an oral anticoagulant, Exanta®, also generically known as ximelagatran, to study the prevention and treatment of blood clots. ¶ 2.

The Class Period starts on April 2, 2003, at which time AstraZeneca issued a press release announcing purportedly positive results from it Phase III study of patients with atrial fibrillation who took Exanta or warfarin to prevent stroke and systemic embolic events. ¶ 31. On July 15, 2003, the Company issued a press release announcing purportedly favorable results

---

[2]      Tyler v. AstraZeneca PLC, 05 CV 10167 (NMG) (D. Mass. Jan. 27, 2005).
Claims against AstraZeneca are pending in three jurisdictions. The Tyler case was filed in Massachusetts. Jaroslawicz v. AstraZeneca, 05 CV 2688 (S.D.N.Y. March 8, 2005) and Elliot v. AstraZeneca, 05 CV 2969 (S.D.N.Y. March 18, 2005) were filed in the Southern District of New York. Marcus v. AstraZeneca, 05 CV 81 (D. Del. Feb. 14, 2005) was filed in Delaware.

[3]      References to complaints for purposes of this memorandum will be to the action entitled Elliot v. AstraZeneca, 05 CV 2969 (S.D.N.Y. Mar. 18, 2005) (referred to as "¶ __").

from its long term study of Exanta for the treatment of acute VTE, claiming that "Exanta™ (ximelagatran), the first in a new class of oral anticoagulants called oral direct thrombin inhibitors (oral DTIs), is as effective as the current standard of care treatment regimen, enoxaparin/warfarin." ¶ 32. The Company stated that the results from the study supported the submission of Exanta for regulatory approval in Europe in the fourth quarter of 2003. ¶ 32.

Statements made by AstraZeneca and its executives continued to tout purportedly positive results of Exanta trials and the lucrative marketing opportunities for Exanta. ¶¶ 33-44. However, the statements were materially false and misleading when made and known or recklessly disregarded as such by Defendants because they failed to disclose many negative facts about Exanta. ¶ 45.

The truth began to emerge on September 9, 2004 when the FDA posted briefing documents on its website in preparation for a committee meeting on September 10, 2004 at which the Company's NDA was scheduled to be reviewed. ¶ 46. The briefing documents revealed previously undisclosed adverse events in the Exanta studies. ¶ 46. Significantly, the FDA found that the degree of elevated liver enzymes was materially higher than previously reported, that there were increased risks of coronary artery disease and heart attacks in patients taking Exanta versus warfarin, and that the Company had left too wide a margin its studies. ¶ 46. Moreover, Defendants failed to disclose that these results would lead to FDA rejection of the NDA. ¶ 46. As a result, the price of AstraZeneca ADRs dropped sharply, falling $2.65 per share, or 5.6%, to close at $44.40 per share on September 9, 2004. ¶ 46.

In reaction to additional undisclosed adverse information about the dangers of Exanta becoming public, the price of AstraZeneca declined again, falling $0.66 per share, or 1.4%, from its closing price of $44.40 on September 9, 2004, to close at $43.74 on September 10,

2004. ¶ 47-48. On October 8, 2004, the Company issued a press release announcing that the FDA did not grant approval for Exanta. ¶ 50. In reaction to this news, the price of AstraZeneca ADRs fell another $0.12 per share to close at $38.68 on October 8, 2004. ¶ 50. On October 22, 2004, *The Financial Times* published an article stating that AstraZeneca took an "80m (Pounds 44m) charge against third-quarter profit to cover the write-down of Exanta."

**ARGUMENT**

**POINT I**

**Movants Should Be Appointed Lead Plaintiff**

**A.     The Procedure Required By The PSLRA**

The PSLRA establishes a procedure governing the appointment of a lead plaintiff in "each action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). On January 27, 2005, notice of the first AstraZeneca action was published over <u>Business Wire</u>. <u>See</u> Brody Decl., Ex. A.

Second, the PSLRA provides that within 90 days after publication of notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines the most adequate to represent the interests of the class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that - -

> (aa)    has either filed the complaint or made a motion in response to a notice . . .
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4 (a)(3)(B)(iii).  See generally Greebel v. FTP Software, 939 F. Supp. 57, 64 (D. Mass. 1996).

### B.    Movants Satisfy The PSLRA's "Lead Plaintiff" Requirements

#### 1.    Movants Have Complied with the PSLRA in Timely Seeking Appointment as Lead Plaintiff

The time period in which class members may move to be appointed as lead plaintiff herein under 15 U.S.C. § 78u-4 (a)(3)(A) and (B) expires on March 28, 2005.  Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on January 27, 2005), Movants timely move this Court to be appointed Lead Plaintiff on behalf of all members of the class.

Movants have duly signed and filed certifications stating that they have reviewed the complaint filed in the action and are willing to serve as a representative party on behalf of the Class.  See Brody Decl., Ex. B.  In addition, Movants have selected and retained experienced and competent counsel to represent them and the class.  See Brody Decl., Exs. D and E.

Accordingly, Movants have satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiff and their selection of counsel, as set forth herein, considered and approved by the court.

#### 2.    Movants Have The Largest Financial Interest In The Relief Sought By The Class

According to 15 U.S.C. § 21(a)(3)(B)(iii), the court shall appoint the lead plaintiff who

represent the largest financial interest in the relief sought by the action. During the Class Period, as evidenced by, among other things, the accompanying signed certifications, collectively, Movants purchased 1,500 AstraZeneca ADRs and suffered estimated losses of $9,862.75 as a result of Defendants' misconduct. See Brody Decl., Ex. C. Therefore, Movants herein have a significant financial interest in this case. Moreover, Movants have not received notice of any other competing applicant for lead plaintiff that has sustained greater financial losses in connection with the purchase of AstraZeneca securities.

Therefore, Movants satisfy all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3.    Movants Otherwise Satisfy the Requirements of Federal Rules of Civil Procedure Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only typicality and adequacy directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff

moves for class certification. In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d 39, 46 (D. Mass. 2001).

Movants satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiff.  Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Typicality exists if claims typicality requires that the named plaintiffs' claims arise from the "same events or course of conduct" and involve the same legal theory as do the claims of the rest of the class. In re Bank of Boston Corp. Sec. Litig., 762 F. Supp. 1525, 1532 (D. Mass. 1991).  However, the claims of the class representative need not be identical to the claims of the class to satisfy typicality. Guckenberger v. Boston Univ., 957 F. Supp. 306, 325 (D. Mass. 1997).

Movants seek to represent a class of purchasers of AstraZeneca ADRs who have identical, non-competing and non-conflicting interests.  Movants satisfy the typicality requirement, because they: (i) purchased AstraZeneca ADRs; (ii) at market prices allegedly artificially inflated as a result of Defendants' violations of the federal securities laws; and (iii) suffered damages thereby.  Thus, typicality is satisfied since the claims asserted by Movants arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory. In re Lernout & Hauspie Sec. Litig., 138 F. Supp. at 46.

Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class."  "To meet the adequacy requirement, plaintiffs must demonstrate that they have common interests and an absence of conflict with the class members and that the plaintiffs' attorneys are qualified, experienced and vigorously able to conduct the litigation." In re Lernout & Hauspie Sec. Litig., 138 F. Supp. at 46.

Here, Movants are adequate representatives of the class. As evidenced by the injury suffered by Movants, who purchased AstraZeneca ADRs at prices allegedly artificially inflated by Defendants' violations of the federal securities laws, the interests of Movants are clearly aligned with the members of the class, and there is no evidence of any antagonism between Movants' interests and those of the other members of the class. In addition, as shown below, Movants' proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movants prima facie satisfy the typicality and adequacy requirements of Rule 23.

## POINT II

### The Court Should Approve Movants' Choice of Lead Counsel

Pursuant to 15 U.S.C. § 78u-4 (a)(3)(B)(v), the proposed Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class they seek to represent. In that regard, Movants have selected Stull, Stull & Brody to serve as Lead Counsel and Gilman and Pastor, LLP to serve as Liaison Counsel. Stull, Stull & Brody and Gilman and Pastor, LLP have extensive experience in successfully prosecuting shareholder and securities class actions and have frequently appeared in major actions in this and other courts. See Brody Decl., Exs. D and E.

## CONCLUSION

For all the foregoing reasons, Movants respectfully request that the Court: (i) appoint

Movants as Lead Plaintiff in the Actions; and (ii) approve Movants' selection of Lead Counsel as set forth herein.

Dated: March 28, 2005                                    Respectfully submitted,

                                                         **GILMAN AND PASTOR, LLP**

                                                         /s/ Douglas M. Brooks
                                                         Douglas M. Brooks (BBO# 058850)
                                                         David Pastor (BBO# 391000)
                                                         Stonehill Corporate Center
                                                         999 Broadway, Suite 500
                                                         Saugus, MA 01906
                                                         (781) 231-7850

                                                         **Proposed Liaison Counsel**
                                                         **For Plaintiffs and the Class**

                                                         **STULL, STULL & BRODY**
                                                         Jules Brody
                                                         Aaron Brody
                                                         6 East 45th Street
                                                         New York, New York 10017
                                                         (212) 687-7230

                                                         **Proposed Lead Counsel For**
                                                         **Plaintiffs and The Class**